

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OVERHEAD DOOR CORPORATION AND GMI HOLDINGS, INC., | § § § | |
| Plaintiffs, | § § | Civil Action No. |
| v. | § § | 3:95-CV-1648-D |
| THE CHAMBERLAIN GROUP, INC., | § § | |
| Defendant. | § § § | |

## FOURTH AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs Overhead Door Corporation ("Overhead Door") and GMI Holdings, Inc. ("GMI") file this Fourth Amended Complaint for Declaratory Judgment against defendant The Chamberlain Group, Inc. ("Chamberlain"), and in support of same allege the following:

### I. PARTIES

1. Plaintiff Overhead Door is a corporation organized and existing under the laws of the State of Indiana and having its principal office and place of business at 6750 LBJ Freeway, Dallas, Texas 75240.

2. Plaintiff GMI, doing business as Genie, is a corporation organized and existing under the laws of the State of Delaware, having a principal office and place of business at 22790 Lake Park Boulevard, Alliance, Ohio 44601, and is doing business within this judicial district and division. Plaintiff GMI is a wholly-owned subsidiary of Plaintiff Overhead Door.



3. Upon information and belief, defendant Chamberlain is a corporation organized and existing under the laws of the State of Connecticut, with a principal office and place of business at 845 Larch Avenue, Elmhurst, Illinois 60126, but is registered to do business in the State of Texas and is doing business in Texas and this judicial district.

## II. JURISDICTION AND VENUE

4. Jurisdiction over the subject matter of this declaratory judgment action arises under 28 U.S.C. §§ 1331, 1338(a), 2201 and 2202 and under the patent laws of the United States, Title 35 of the United States Code. A case of actual controversy within this Court's jurisdiction exists between Plaintiffs Overhead Door and GMI and defendant Chamberlain regarding the alleged infringement, invalidity and unenforceability of United States Patent No. Re. 35,364 ("the '364 patent"), which issued on or about October 29, 1996, as a reissue of United States Patent No. 4,750,118 ("the '118 patent"). The Court has jurisdiction over Plaintiffs antitrust claims pursuant to 28 U.S.C. §§ 1331, 1337 and 15 U.S.C. § 15.

5. The Court has personal jurisdiction over the parties to this action. Venue is proper in this Court pursuant to the provisions of 28 U.S.C. §§ 1391, 1400(b) and 15 U.S.C. § 22. In an Order entered May 17, 1996, this Court held that a case of actual controversy exists between plaintiffs Overhead Door/GMI and the defendant Chamberlain. Chamberlain does not contest either personal jurisdiction or venue, and the parties are before the Court for purposes of this action.

### III. FACTUAL BACKGROUND

*The Infringement Controversy*

6.  Plaintiffs Overhead Door and GMI are and for a long time have been engaged in the business of manufacturing and selling residential garage door opening systems throughout the United States, these systems being offered under the well known trademarks "Overhead Door" and "Genie," respectively.

7.  In May of 1995, GMI announced that it would be introducing into the marketplace garage door opening systems ("New Genie Systems") equipped with a sophisticated access security system based upon rolling code technology. These systems were designed to prevent unauthorized persons from operating the garage door by using intercepted access codes. In a letter to Overhead Door dated June 9, 1995, Chamberlain expressly alleged that these New Genie Systems would constitute an infringement of the '118 patent. GMI subsequently produced and sold modified versions of the New Genie Systems incorporating unique features ("Genie Coding Features"), such as the random selection of memory locations for storing transmitter information, particularly transmitter code portions associated with the rolling code technology. On or about October 29, 1996, Chamberlain induced the United States Patent and Trademark Office ("PTO") to reissue the '118 patent as the '364 patent. The New Genie Systems were and continue to be accused by Chamberlain as infringing its patent rights.

8.  Substantial time and resources have been invested in the research and development of the New Genie Systems and related products. On April 11, 2000, the United States Patent and Trademark Office issued United States Patent No. 6,049,289 for the New Genie Systems, the PTO indicating the Genie Coding Features being patentably distinguishable from Chamberlain's '364 patent. Chamberlain's allegations of infringement and litigation claims have placed a cloud

over plaintiffs' products and have placed Overhead Door and GMI in positions of uncertainty and insecurity. Accordingly, Overhead Door and GMI bring this action to seek relief in the form of a conclusive judicial declaration of non-infringement, as well as invalidity and unenforceability of the '364 patent, for the reasons set out hereinafter.

*Chamberlain's Inequitable Conduct*<br>*<u>Before the PTO</u>*

*<u>During the Reissue Proceedings</u>*

9.     Defendant Chamberlain filed an application to reissue the '118 patent with the PTO on or about August 24, 1989, and the application was assigned serial number 07/398,379 ("the '379 application"). The reissue application was prepared by counsel for defendant Chamberlain in the present action.

10.     On June 13, 1990, the PTO mailed an office action to Chamberlain, rejecting all claims pending in the '379 application under 35 U.S.C. § 103 as unpatentable in view of a U.S. Patent No. 4,665,397 to Pinnow, which had an effective filing date of November 1, 1983.

11.     Chamberlain did not contest the relevance of the subject matter of the Pinnow patent. Instead, Chamberlain, through its attorney, conducted a personal interview with the patent examiner on or about August 23, 1990, and advised the patent examiner of its intention to file a Rule 131 affidavit to show that Chamberlain's invention actually antedated the Pinnow '397 patent. The patent examiner documented his interview with Chamberlain's attorney and stated the following: "Mr. Wakely proposed filing a Rule 131 affidavit which would antedate the 11-1-83 filing date of the parent Pinnow patent. No agreement was reached at this time regarding such 131 affidavit."

FOURTH AMENDED COMPLAINT FOR DECLARATORY JUDGMENT - Page - 4

12. Thereafter, with the intent to deceive the PTO so that the rejection based on the Pinnow reference would be withdrawn, Chamberlain prepared declarations under 37 C.F.R. § 1.131 to be signed by each of the three inventors. The declarations were deceptively worded to refer to the dates of conception, reduction to practice, and alleged diligence, of an undefined amorphous "coding system", instead of the claimed invention which Chamberlain was attempting to patent.

13. Chamberlain then, with intent to deceive, induced the inventors to sign the declarations under 37 C.F.R. § 1.131 without properly explaining the meaning of the phrase "coding system" as used in the declarations, and also by failing to properly explain the significance of the dates of "conception" and "reduc[tion] to practice", and "diligence", as used in the declarations. Upon information and belief, the inventors would not have signed the declarations if the meanings of the terms used in the declarations had been properly explained to them.

14. On October 23, 1990, Chamberlain, acting through its attorney, and with the intent to deceive the PTO so that it would withdraw the rejection based on the Pinnow reference, then filed with the PTO an "Amendment and Request for Reconsideration" ("Reconsideration Request") supported and accompanied by the deceptively worded inventors' declarations under 37 C.F.R. § 1.131.

15. Statements contained in the Reconsideration Request prepared, signed and filed with the PTO by Chamberlain, were material, false, deceptive and intentionally designed to lead the PTO to believe that the claimed invention had been conceived prior to November 1, 1983, when, in fact, the claimed invention had not been conceived as of November 1, 1983 and the documents in support of the statements were false.

FOURTH AMENDED COMPLAINT FOR DECLARATORY JUDGMENT - Page - 5

16. The statements contained in the Reconsideration Request prepared, signed and filed with the PTO by Chamberlain were material, false, deceptive and intentionally designed to lead the PTO to believe that the claimed invention had been reduced to practice by July 17, 1984, when, in fact, the claimed invention had not been reduced to practice as of July 17, 1984, and the documents in support of the statements were false.

17. The statements contained in the Reconsideration Request prepared, signed and filed with the PTO by Chamberlain were material, false, deceptive and intentionally designed to lead the PTO to believe that due diligence was exercised in reducing the claimed invention to practice from just prior to November 1, 1983 until the claimed invention was alleged to have been reduced to practice on July 17, 1984, when, in fact, such due diligence had not been exercised, and the documents in support of the statements were false.

18. In reliance upon the material, false representations contained in the Reconsideration Request and the declarations under 37 C.F.R. § 1.131, the PTO mailed an office action on December 24, 1990 that withdrew the previous rejection based on the Pinnow reference, and allowed the claims. The PTO thereafter issued the '364 patent on this claimed invention, which is the patent in suit.

*Failure to Disclose Sears Discussions*

19. Sears, Roebuck & Co. ("Sears") is the major customer of defendant Chamberlain and Chamberlain's affiliated company, Chamberlain Manufacturing Corp. (collectively, "Chamberlain") for garage door openers. Between 1979 and October 29, 1994, more than one year prior to the date of filing of the application for Chamberlain's '118 patent, Chamberlain, Chamberlain Manufacturing and Sears were engaged in extensive discussions regarding garage door operator equipment incorporating identical and/or obvious versions of the claimed invention

FOURTH AMENDED COMPLAINT FOR DECLARATORY JUDGMENT - Page - 6

of the '364 patent. During the course of these discussions, equipment incorporating the identical and/or obvious versions of the claimed inventions of the '364 patent were made the subject of a commercial offer for sale to Sears by Chamberlain. At the time of these discussions, and in particular at the time of Chamberlain's commercial offer for sale to Sears, the inventions were ready for patenting.

20.  Chamberlain, with the intent to deceive the PTO, intentionally withheld disclosing to the patent examiner, during the examination of the '118 patent and the '364 patent, the aforementioned discussions with Sears, the fact that the inventions of the '118 and the '364 patents were ready for patenting, and the nature of Chamberlain's commercial offer for sale to Sears.

21.  The failure to disclose to the patent examiner the aforementioned discussions and activities were material and, without benefit of these disclosures, the PTO issued the '118 patent and thereafter the '364 patent.

*During this Lawsuit*

22.  Chamberlain has further engaged in inequitable conduct during the course of this lawsuit by filing a false and misleading Request for Certificate of Correction in the PTO that was designed to, and did, improperly add new matter to the '364 patent and alter its meaning.

23.  Figure 2 of the '364 patent depicts a user-operated, multi-position, mechanical switch, which is identified by the numeral "23". The specification of the '364 patent, at column 3, lines 14-18, states that "switch 23 can be moved to a number of selected positions indicated by the 1 through 5 so as to allow the particular code of a number of different transmitters to be stored in the receiver so that the receiver will respond to such codes."

24. When the PTO issued the '364 patent on October 29, 1996, the switch identified by the numeral "23" in Figure 2 was referred to at column 4, lines 60-61 as "code location pointer 23".

25. On October 27, 1996, Overhead Door and GMI served interrogatories upon Chamberlain, which requested Chamberlain's contentions as to the proper construction of the "memory selection switch" element recited in Claim 1 and the "memory selection second means" element recited in Claim 5 (collectively the "Memory Selection Switch Elements") of the '364 patent. Chamberlain served its answers to the interrogatories on or about January 29, 1997.

26. On or about January 15, 1997 - while Chamberlain's answers to the interrogatories requesting its construction of the Memory Selection Switch Elements were still pending - Chamberlain's attorney, acting on behalf of Chamberlain, filed a "Request for Certificate of Correction of Mistakes" (the "Request") with the PTO. The Request stated that the numeral "23" in the reference "code location pointer 23" at column 4, lines 60-61 was a mistake and a "typographical or clerical" error and that the numeral "23" should be deleted. Chamberlain additionally represented to the PTO that the deletion of the numeral "23" appearing at column 4, line 61 would not introduce new matter into the specification of the '364 patent. These statements were false and known to be false and were made by Chamberlain solely to deceive the PTO and improperly mislead this Court.

27. The improper change of the numeral "23" appearing at column 4, line 61 of the '364 patent is material to the parties' dispute regarding the proper meaning and scope of the Memory Selection Switch Elements of the claims of the '364 patent.

28. Chamberlain did not inform Overhead Door and GMI or this Court of its

FOURTH AMENDED COMPLAINT FOR DECLARATORY JUDGMENT - Page - 8

request to delete numeral "23" from column 4, line 61 of the '364 patent, nor did Chamberlain inform the PTO of the relevance of the numeral "23" in this litigation.

29. On March 25, 1997, as a result of Chamberlain's Request, the PTO issued a "Certificate of Correction" which deleted the numeral "23" from column 4, line 61 of the '364 patent.

30. The numeral "23" originally appearing at column 4, line 61 of the '364 patent was not a mistake and was not a typographical or clerical error. Deletion of the numeral "23" introduced new matter into the specification of the '364 patent. In motion papers filed with this Court, Chamberlain has cited and relied upon the absence of the numeral "23" from column 4, line 61 as alleged support for its proffered interpretation of the Memory Selection Switch Elements of Claims 1 and 5 of the '364 patent.

31. The Request Chamberlain filed with the PTO on or about January 15, 1997 contained affirmative misrepresentations of material fact, which Chamberlain made with the intent to deceive the PTO so that the numeral "23" would be deleted from column 4, line 61 of the '364 patent. Specifically, Chamberlain falsely and knowingly represented that the numeral "23" originally appearing at column 4, line 61 was a mistake and a typographical or clerical error, when, in fact, it was not. Chamberlain also falsely and knowingly represented that deletion of the numeral "23" from column 4, line 61 would not introduce new matter, when, in fact, new matter was introduced by the deletion of the numeral "23".

## COUNT I

### *Declaratory Judgment of Non-infringement*

32.     The allegations of paragraphs 1-8 above are realleged and incorporated herein by reference.

33.     Plaintiffs allege and seek a judicial determination pursuant to 28 U.S.C. §§ 2201 and 2202 that the garage door opening systems, operators or other equipment heretofore or now manufactured, sold or offered for sale by plaintiffs, including the New Genie Systems, do not infringe and have not infringed any claim of the '364 patent or its predecessor, the '118 patent.

## COUNT II

### *Declaratory Judgment of Patent Invalidity*

34.     The allegations of paragraphs 1-8 above are realleged and incorporated herein by reference.

35.     Plaintiffs allege and seek a judicial declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that the '364 patent is invalid and unenforceable pursuant to 35 U.S.C. §§ 102, 103, 112 and 251 for one or more of the following reasons:

>    (a)     The alleged invention of the claims of the '364 patent was known or used by others in this country or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for the '364 patent, and/or would have been obvious over such prior art at that time to a person having ordinary skill in the art to which the subject matter of the alleged invention pertains.

(b) The alleged invention of the claims of the '364 patent was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country more than one year prior to the date of the application for the '118 patent and/or would have been obvious at that time over such prior art to a person having ordinary skill in the art to which the subject matter of the alleged invention pertains.

(c) The alleged invention of the claims of the '364 patent was described in a patent granted on an application for patent by another filed in the United States before the invention thereof by the applicant for the '364 patent, and/or would have been obvious over such prior art at that time to a person having ordinary skill in the art to which the subject matter of the alleged invention pertains.

(d) The '364 patent specification does not contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as required by the Patent Laws of the United States as to enable any person skilled in the art to which it pertains to make and use the invention.

(e) The '364 patent specification does not set forth the best mode contemplated by the inventors of the '364 patent of carrying out the invention.

(f) The claims of the patent do not particularly point out and distinctly claim the subject matter which the inventors regarded as their invention.

(g) Claims 5-8 are invalid as failing to comply with the requirements of 35 U.S.C. 251, including but not limited to violation of the doctrine of recapture.

## COUNT III

### *Declaratory Judgment of Unenforceability*

36.     The allegations of paragraph 1-31 above are realleged and incorporated herein by reference.

37.     Plaintiffs allege and seek a judicial declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that the '364 patent is unenforceable as having been procured through inequitable conduct committed by defendant Chamberlain upon the PTO, as specifically alleged in paragraphs 9 through 31.

38.     Plaintiffs allege and seek a judicial declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that the '364 patent is unenforceable by reason of Chamberlain's use of the deceptively worded declarations, alleged in paragraphs 12 and 13 hereof, to avoid the legitimate consideration by the PTO and the Court of prior art to the '364 patent claims, including but not limited to U.S. Patent No. 4,638,433.

## COUNT IV

### *Antitrust Violation—Fraudulent Procurement and Bad Faith Enforcement of Patent*

39.     The allegations of paragraphs 1-31 above are realleged and incorporated herein by reference.

40.     As set forth in paragraphs 9-21 above, Chamberlain obtained the '364 Patent based upon knowing, willful and deliberate material and fraudulent misstatements or omissions to the PTO. The '364 Patent would not have issued but for those misstatements and omissions.

41. The conduct alleged herein occurred within interstate commerce and has substantially and directly affected interstate commerce.

42. The relevant product market for purposes of this count consists of the market for electronic garage door operating systems that utilize a remote control technology. This market will be referred to as the garage door opener or "GDO Market".

43. Chamberlain has attempted to monopolize the GDO Market by, among other things, fraudulently procuring and asserting the '364 patent against its competitors in the industry. In addition to Overhead Door, Chamberlain has threatened and/or brought infringement actions against many others in the industry, including, most recently, Innovative Home Products, Inc., Lynx Industries, Inc., and Napoleon Spring Works, Inc.

44. As asserted and construed by Chamberlain, the '364 patent gives Chamberlain the power to control price and exclude competition in the GDO Market.

45. Chamberlain fraudulently procured the '364 Patent to attempt to achieve its monopolization of the GDO.

46. As alleged above, the '364 Patent is invalid because the requirements for patentability set forth in 35 U.S.C. Part II were not met.

47. As alleged above, the '364 Patent is unenforceable because of Chamberlain's fraud and inequitable conduct in prosecuting that patent and in seeking modification to the scope of that patent.

48. Chamberlain has enforced, or has attempted to enforce the '364 Patent to achieve its monopolization in the GDO Market even though the '364 Patent is invalid and/or unenforceable.

FOURTH AMENDED COMPLAINT FOR DECLARATORY JUDGMENT - Page - 13

49. Chamberlain has enforced or has attempted to enforce the '364 Patent even though Chamberlain is in possession of facts that prevent Chamberlain from having a good faith belief that the patent is infringed, valid or enforceable.

50. Chamberlain has undertaken the actions set forth above with the specific purpose and intent of injuring Overhead Door and others in the garage door opener industry, and of monopolizing interstate and foreign commerce in the GDO Market.

51. There exists a dangerous probability that Chamberlain will succeed in the attempt to monopolize.

52. Based on the conduct alleged herein, Chamberlain has attempted to monopolize interstate and foreign commerce in the GDO Market in violation of Section 2 of the Sherman Act (15 U.S.C. § 2).

53. As a direct and proximate result of Chamberlain's violation of Section 2 of the Sherman Act, Plaintiffs have sustained injury to their business and property, including but not limited to the costs and expenses of this action, as well as the losses and costs inherent in the disruption of Plaintiffs' business caused by Chamberlain's conduct.

54. As a direct and proximate result of Chamberlain's violation of Section 2 of the Sherman Act, the public is being denied the benefit of full and free competition in the market for manufacture and sales of garage door operating systems and has been subjected to Chamberlain's continued attempts to monopolize those markets and, based upon information and belief, has suffered damage as a result.

55. In addition to its actual damages, Plaintiffs are entitled to recover treble damages and their reasonable attorneys' fees, together with costs of suit.

56.     Unless Chamberlain is permanently enjoined by the Court, Plaintiffs will suffer imminent and irreparable injury for which it has no adequate remedy at law.

**WHEREFORE**, Plaintiffs Overhead Door and GMI pray for the following:

(a)     a judgment declaring that the garage door opening systems, operators and other equipment manufactured, sold, or offered for sale by plaintiffs do not infringe any properly construed claim of the '364 patent or its predecessor, the '118 patent;

(b)     a judgment declaring all claims of the '364 patent invalid as failing to meet one or more of the requirements for patentability set forth in Title 35 of the United States Code, particularly 35 U.S.C. §§ 102, 103, 112 and 251;

(c)     a judgment declaring all claims of the '364 patent, and all patents which are reissues of the '118 or '364 patent, unenforceable as having been procured through inequitable conduct and fraud committed by defendant Chamberlain upon the United States Patent and Trademark Office;

(d)     a judgment that Chamberlain violated Section 2 of the Sherman Act;

(e)     permanent injunctive relief prohibiting Chamberlain, its officers, agents, servants, and employees, and all persons in concert or privity with it, from directly or indirectly:  (1) charging infringement of U. S. Patent No. Re. 35,364 against plaintiffs or any of their customers or distributors; and (2) violating the antitrust laws of the United States;

(f)     actual and treble damages in an amount to be determined at trial;

(g)     exemplary and punitive damages in an amount to be determined at trial;

(h)     an equitable accounting of Chamberlain's profits;

(i) adjudging this to be an exceptional case under 35 U.S.C. § 285;

(j) costs of the litigation, including reasonable attorneys' fees and court costs; and

(k) such other and further relief which this Court deems just, equitable and proper.

Respectfully submitted,

*[signature]*

Kenneth R. Glaser
Texas Bar No. 07999000
Michael Lowenberg
Texas Bar No. 12630000
John R. Emerson
Texas Bar No. 24002053

AKIN, GUMP, STRAUSS, HAUER
    & FELD, L.L.P.
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201-4618
Tel: (214) 969-2800
Tel: (214) 969-4343


Stephen P. Swinton, Esq.
Cooley Godward, L.L.P.
4365 Executive Drive, Suite 1100
San Diego, CA 92121
Tel: (858) 550-6000
Fax: (858) 453-3555

ATTORNEYS FOR PLAINTIFFS
OVERHEAD DOOR CORPORATION
AND GMI HOLDINGS, INC.

## CERTIFICATE OF SERVICE

This is to certify that a true and accurate copy of the foregoing "**FOURTH AMENDED COMPLAINT FOR DECLARATORY JUDGMENT**" was delivered to counsel for Defendant in accordance with the Federal Rules of Civil Procedure at the following addresses:

John F. Flannery     (via overnight courier and facsimile)
Karl R. Fink
Robert J. Fox
FITCH, EVEN, TABIN & FLANNERY
120 South LaSalle Street, Suite 1600
Chicago, Illinois 60603
Tel: (312) 577-7000
Fax: (312) 577-7007

and

V. Bryan Medlock, Jr.     (via hand delivery)
SIDLEY & AUSTIN
717 North Harwood, Suite 3400
Dallas, Texas 75201
Tel: (214) 981-3300
Fax: (214) 981-3400

on this the 31st day of August, 2000.

#384643 v1